# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **NICOLE AUSTIN, et al.** | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 3:24-cv-00839-S** |
| | § | |
| **v.** | § | **[Removed from Dallas County Law Court** |
| | § | **No. CC-24-02494-B]** |
| **ONE TECHNOLOGIES LLC,** | § | |
| | § | |
| **Defendant.** | § | |

---

**ONE TECHNOLOGIES, LLC'S MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT**

---

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ............................................................................................. 1

    A.  California's Email Statute and Plaintiffs' Allegations................................... 1

    B.  Failed Efforts to Expand Section 17529.5 ................................................. 2

II.  LEGAL STANDARD....................................................................................... 4

III.  ARGUMENT .................................................................................................. 6

    A.  California Law Prohibits Plaintiffs from Pursuing Legislatively-Rejected
        Legal Theories .......................................................................................... 6

    B.  Count One Fails to State a Claim Upon Which Relief Can be Granted ...................... 7

        1.  Plaintiffs' Domain Name Theory of Liability Fails as a Matter of
                Law. ....................................................................................... 7

        2.  Plaintiffs' Theory that Misleading Subject Lines Can Support a
                Section 17529.5(a)(2) Claim Fails as a Matter of Law............................ 11

        3.  Plaintiffs' Theory that the Email Subject Lines Violate
                Section 17529.5(a)(3) Fails as a Matter of Law. ....................................... 14

        4.  Plaintiffs "From" Name Theory Fails as a Matter of Law........................ 18

    C.  Count Two Fails as a Matter of Law. ........................................................ 22

        1.  Plaintiffs' Aiding and Abetting and Conspiracy Theories Under
                Section 17529.5 Fail as a Matter of Law. ................................................ 22

IV.  CONCLUSION............................................................................................. 24

# TABLE OF AUTHORITIES

Cases

*Anderson v. Mueller,* No. 3:01-CV-2193-M, 2002 U.S. Dist. LEXIS 4183 (N.D. Tex. Mar. 11, 2002) ................................................................................................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 5

*Balsam v. Trancos Inc*., 203 Cal. App. 4th 1083 (1st Dist. 2012) ........................................... 10

*Belridge Farms v. Agric. Lab. Rels. Bd.*, 21 Cal. 3d 551 (Cal. 1978) ....................................... 20

*City of Santa Cruz v. Municipal Court*, 49 Cal. 3d 74 (Cal. 1989) .................................... 7, 10

*Dyna-Med, Inc. v. Fair Emp. & Hous. Com.*, 43 Cal. 3 ........................................................... 12

*Ferrer v. Chevron Corp.*, 484 F.3d 776 (5th Cir. 2007) ............................................................ 5

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011) ................................................................ 5

*Greenberg v. Digital Media Solutions LLC*, 65 Cal. App. 5th 909 (1st Dist. 2021) ............. 11, 14

*Holden v. Fluent, Inc.*, No. 20-CV-03816-JCS, 2020 WL 6822914 (N.D. Cal. Nov. 20, 2020) ......................................................................................................................... 13, 20

*In re Padilla*, 222 F.3d 1184 (9th Cir. 2000) ......................................................................... 13

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-00662-JRG, 2018 U.S. Dist. LEXIS 218058 (E.D. Tex. Sept. 24, 2018) ................................................. 4

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (Cal. 2002) ..................................................................... 18

*Kelly v. Methodist Hosp. of S. Cal*., 22 Cal. 4th 1108 (Cal. 2000) ................................. 4, 6, 19, 23

*Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334 n.5 (Cal. 2010) ........................................ 20

*Meyers v. Textron, Inc.*, 540 Fed. Appx. 408 (5th Cir. 2013) .................................................... 5

*Morales-Garza v. Lorenzo-Giguere*, 277 Fed. Appx. 444 (5th Cir. 2008) .................................. 4

*Murphy v. Kenneth Cole Prods.*, *Inc.*, 40 Cal. 4th 1094 (2007) ............................................ 23

*Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006) .............. 2, 10

*Rad v. U.S.*, 983 F.3d 651 (3rd Cir. 2020) .............................................................................. 9

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) ............................. 13

*Rosolowski v. Guthy-Renker*, 230 Cal. App. 4th 1403 (2014) ...................................... 17

*Sierra Club v. California Coastal Com.*, 35 Cal. 4th 839 (Cal. 2005) ................................ passim

*Silverstein v. Keynetics Inc.*, 192 F. Supp. 3d 1045 n.3 (N.D. Cal. 2016), *aff'd*, 727 Fed. Appx. 244 (9th Cir. 2018) ........................................................................................ 20

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353 (5th Cir. 2004)............................ 5

*U.S. v. Uvalde Consolidated I.S.D.*, 625 F.2d 547 (5th Cir. 1980)................................ 4

*Wagner v. Spire Vision LLC*, No. C 13-04952 WHA, 2015 WL 876514 (N.D. Cal. Feb. 27, 2015) ...................................................................................................... 9, 20

*Wells v. Marina City Properties, Inc.*, 29 Cal. 3d 781 (Cal. 1981) ............................... 13

*Wells v. One2One Learning Foundation*, 39 Cal. 4th 1164 (Cal. 2006) ........................... 7

*White v. Cnty. of Sacramento*, 31 Cal. 3d 676 (Cal. 1982)........................................... 12

*Wilson v. City of Laguna Beach*, 6 Cal. App. 4th 543 (1992) ................................... 6, 12

*Woods v. Young*, 53 Cal. 3d 315 (Cal. 1991)................................................... 13

Constitutional Provisions & Statutes

15 U.S.C. § 7702(8) ................................................................................... 20

18 U.S.C. § 1037(a)(3)............................................................................... 9

Cal. Bus. & Prof. Code Sec. 17529.1(a) ......................................................... 22

Cal. Bus. & Prof. Code § 17500 ................................................................... 18

Cal. Bus. & Prof. Code § 17529 ................................................................... 20

Cal. Bus. & Prof. Code § 17529.5 ......................................................... passim

Cal. Bus. & Prof. Code § 17529.5(a)..................................................... passim

California Evidence Code § 1043(b) ................................................................ 7

Rules & Regulations

Fed. R. Civ. P. 12(b)(6)................................................................... passim

Plaintiffs' amended complaint fails to state a claim for violating California's email statute. Foremost, the California Legislature specifically considered and then expressly rejected all but one theory of liability the plaintiffs pursue while the caselaw invalidates the remaining one. Because California Supreme Court precedent prohibits imposing liability on theories that the California Legislature considered and rejected, and the caselaw invalidates plaintiffs' remaining theory and others, the complaint fails to state a claim upon which relief can be granted. Thus, defendant One Technologies, LLC d/b/a FreeScore360 moves the Court to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and shows additionally as follows:

## I.    INTRODUCTION

### A.    California's Email Statute and Plaintiffs' Allegations

Plaintiffs allege they received nearly 2,000 emails that violate California's email statute codified at California Business and Professions Code § 17529.5. (Document 44, "FAC.") Section 17529.5 allows email recipients like plaintiffs to pursue civil remedies in these narrow circumstances:

> (1)    The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.
>
> (2)    The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.
>
> (3)    The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

Cal. Bus. & Prof. Code § 17529.5(a) (1)-(3).

To support their claims, plaintiffs attach two emails they allege "are representative samples of the spams at issue." (FAC ¶ 27, Exs. A-B.) Each "representative" email identifies One Technologies, LLC d/b/a FreeScore360 by name and address, links to FreeScore360's website,

and contains a link allowing recipients to unsubscribe from receiving the email. (FAC ¶ 27, Exs. A-B.)  In fact, plaintiffs admit that "[t]here is no dispute that the spams at issue promote ONETECH and its websites and credit monitoring/credit score checking services." (FAC ¶ 97.)

Plaintiffs in their amended complaint also concede that they must prove that the emails contain material falsity and deception to survive the federal CAN-SPAM Act's preemption clause. (FAC ¶¶ 36-38.)  Indeed, the caselaw is clear that where, as here, emails do not contain material falsity or deception but rather identify the defendant, CAN-SPAM's preemption clause preempts claims alleging state law violations even if the emails contain other inaccuracies. *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 357-358 (4th Cir. 2006).

To circumvent preemption given that each of the emails identify One Technologies and to pursue their windfall of $1,000 in statutory damages for the nearly 2,000 emails over which they sue, plaintiffs resort to alleging a slew of hypertechnical arguments about why they believe the emails violate Section 17529.5.  They contend, for example, that an email sent from a domain name that truthfully discloses that the domain name owner privately registered it is materially false and deceptive because plaintiffs could not identify the actual domain name owner using the WHOIS database. (FAC ¶ 66.)  They also allege that using "re:" in the subject lines violates the statute, and that emails containing misleading subject lines can violate Section 17529.5(a)(2) in addition to Section 17529.5(a)(3).  However, the California Legislature specifically considered and expressly rejected these and all other theories of liability except for one, and the caselaw invalidates the remaining theory and others.

### B.    Failed Efforts to Expand Section 17529.5

On February 15, 2018, Assembly Member Ed Chau introduced California Assembly Bill 2546 ("AB 2546") that proposed to vastly expand the conduct prohibited by Section 17529.5 and

persons liable for violations. (Ex. 1., APP 5-15.)  When Chau presented AB 2546, his bill analysis stated that he sought "to bolster California's anti-spam laws" (Ex. 12 at 2, APP 290.) by "expand[ing] the list of triggering circumstances that would lead to a violation of the state's anti-spam law in numerous ways." (Ex. 10 at 4-5, APP 279-280.)

Chau further explained that "[t]his bill would expand the existing circumstances listed under current law, and add new circumstances including, among other things": various domain name registration methods; generic or purported from names; falsified, misrepresented, or forged information in the subject line or body; and subject lines containing "re:". (Ex. 10 at 1, APP 276; Ex. 12 at 2, APP 290) AB 2546 also expanded the scope of parties liable, "captur[ing] not just those persons or entities advertising to Californians in violation of those triggering events, but also personally initiating or even enabling or assisting another person or entity to engage in such acts in violation of the law (similar to aiding or abetting a crime)." (Ex. 10 at 5, APP 280.) Chau explained that "by enhancing the triggering events that could lead to a violation of the anti-spam law," the California Legislature could "ensure that the law [was] sufficiently broad." (Ex. 10 at 5, APP 280.)

Between February 15, 2018, and August 17, 2018, the legislative process progressively dismantled virtually all of what AB 2546 proposed. (Exs. 1-7, 9, APP 5-82, 273-274)  Indeed, AB 2546's journey through several Assembly and Senate Committee hearings followed by floor readings resulted in so many rejections that all that remained at the end was a mere shell of its original form despite extensive lobbying efforts by Chau *and* plaintiffs' counsel. (Exs. 1-7, 9, 11, APP 5-82, 273-274, 287)  Presumably for these reasons, Chau pulled the bill on August 29, 2018, and AB 2546 ultimately stalled and died on November 30, 2018. (Ex. 9 at 2, APP 274.)

The California Supreme Court holds that where "the Legislature considered, but rejected, proposed language," courts "may not judicially write the deleted provision back into the [] act" (*Sierra Club v. California Coastal Com*., 35 Cal. 4th 839, 856 (Cal. 2005)) or "adopt a judicial construction to give [the statute] the meaning [the court] might believe most salutary." *Kelly v. Methodist Hosp. of S. Cal*., 22 Cal. 4th 1108, 1114 (Cal. 2000). The caselaw thus prohibits construing or applying statutes in a manner that would reinsert into statutes provisions or theories of liability that the California Legislature rejected. *Sierra Club*, 35 Cal. 4th at 856; *Kelly*, 22 Cal. 4th at 1114.

Notwithstanding, plaintiffs are doing exactly what the California Supreme Court precedent prohibits: pursuing liability on theories that the California Legislature rejected. This Court should bar the plaintiffs from doing so, find that each of their theories of liability fails as a matter of law given the California Legislature's and caselaw's express rejections of the theories the plaintiffs advance, and dismiss the plaintiffs' amended complaint for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates dismissing a complaint for "failure to state a claim upon which relief can be granted." Thus, "[w]here the plaintiff makes allegations that show on the face of the complaint that she is not entitled, as a matter of law, to the relief sought, the complaint should be dismissed." *Anderson v. Mueller*, No. 3:01-CV-2193-M, 2002 U.S. Dist. LEXIS 4183, at *6 (N.D. Tex. Mar. 11, 2002) (citing *U.S. v. Uvalde Consolidated I.S.D.*, 625 F.2d 547 (5th Cir. 1980)). Accordingly, "[i]f it is apparent from the face of the complaint that an insurmountable bar to relief exists, and the plaintiff is not entitled to relief, the court must dismiss the claim." *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-00662-

4

JRG, 2018 U.S. Dist. LEXIS 218058, at *8 (E.D. Tex. Sept. 24, 2018) (citation omitted); *see also*

*Morales-Garza v. Lorenzo-Giguere*, 277 Fed. Appx. 444, 446 (5th Cir. 2008) (citation omitted).

Courts need "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). Further, courts also need not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (citations omitted). Therefore, when the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss for failure to state a claim, a federal court can "take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 Fed. Appx. 408, 409 (5th Cir. 2013) (citations omitted). Accordingly, courts may consider legislative deliberations on a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) without converting the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (affirming dismissal and holding "the district court took appropriate judicial notice of public[ly]-available documents and transcripts produced by the [Food and Drug Administration] FDA, which were matters of public record directly relevant to the issue at hand.")

III.    **ARGUMENT**

    A.    **California Law Prohibits Plaintiffs from Pursuing Legislatively-Rejected Legal Theories**

The California Supreme Court holds that where "the Legislature considered, but rejected, proposed language," courts "may not judicially write the deleted provision back into the [] act" (*Sierra Club*, 35 Cal. 4th at 856) or "adopt a judicial construction to give [the statute] the meaning [the court] might believe most salutary." *Kelly*, 22 Cal. 4th at 1114. Thus, "[t]he rejection [by the California Legislature] of a specific provision contained in an act as originally introduced is 'most persuasive' that the act should not be interpreted to include what was left out." *Wilson v. City of Laguna Beach*, 6 Cal. App. 4th 543, 555 (1992) (citations omitted).

In *Sierra Club v. California Coastal Commission*, the California Supreme Court rejected the plaintiff's interpretation of the Coastal Act, noting that "the Legislature considered, but rejected, proposed language." 35 Cal. 4th at 856. The plaintiff argued that, consistent with "the manifest purposes of the Coastal Act," the statute should be interpreted to expand the Commission's authority to deny permits by considering the impacts of activities outside the coastal zone, thereby extending its regulatory reach beyond the zone itself. *Id*. However, the court found this expansion of the statute to be "precisely the opposite" of the California Legislature's intent, as it had rejected language that would have effectuated the interpretation proposed by the plaintiff. *Id*.

In *Wells v. One2One Learning Foundation*, the California Supreme Court held that the California Legislature's deliberate deletion of language referring to public entities as "persons" under the California False Claims Act was a "significant indicia" that the statute was not intended to apply to public entities. 39 Cal. 4th 1164, 1193 (Cal. 2006), *as modified* (Oct. 25, 2006). The court thus denied extending liability to public school districts, as argued by the plaintiffs. *Id*.

Likewise, in *City of Santa Cruz v. Municipal Court*, the California Supreme Court refused to impose a "personal knowledge" requirement under California Evidence Code Section 1043(b), explaining that "the Legislature has conspicuously failed to do so" having considered and rejected a proposed amendment. 49 Cal. 3d 74, 88-89 (Cal. 1989). The court concluded, "[t]he legislation, in short, works. But in any event, it is not within our province to rewrite it." *Id*. at 94.

Thus, the caselaw is clear that plaintiffs may not pursue theories of liability that the California Legislature considered and rejected. Yet, that is exactly what they attempt to do here.

### B. <u>Count One Fails to State a Claim Upon Which Relief Can be Granted</u>

Plaintiffs premise Count One for violations of Section 17529.5(a) on domain registrations that do not identify the owner, from names containing "re:", from names that imply information about what the source knew about the recipients, from names that led plaintiffs to believe that they sent the emails to themselves, and false subject lines when read in isolation without considering the email contents. Each legal theory fails as a matter of law because the California Legislature and/or caselaw rejected them.

#### 1. Plaintiffs' Domain Name Theory of Liability Fails as a Matter of Law.

Plaintiffs' theory that using proxy-registered, redacted-for-privacy (privately) registered, falsely registered, or unregistered (purported) domain names violates Section 17529.5(a)(2) because they are not "properly registered and readily traceable to the actual sender by querying the publicly accessible Whois database" fails as a matter of law. (FAC ¶¶ 53-69.)

On February 15, 2018, the California Legislature considered AB 2546 and its introduction of an amendment prohibiting proxy-registered, privately registered, falsely registered, and unregistered domain names through this proposed language:

> 7    (6) The email advertisement's headers show that it was sent
> 8    from or purportedly sent from a domain name that was proxy
> 9    registered or falsely registered so that a person searching a publicly
> 10   available database such as WHOIS cannot readily determine the
> 11   true identity of the party who initiated the email.

(Ex. 1 at 8, APP 12). On May 29, 2018, AB 2546, which still included this amendment, was presented to the Assembly for its third reading to be considered for a vote to be referred to the Senate for the next step in the legislative process. (Ex. 9 at 1, APP 273.)

However, the California Legislature, via the Assembly, **rejected** this amendment:

> 20   ~~(6) The email advertisement's headers show that it was sent~~
> 21   ~~from or purportedly sent from a domain name that was proxy~~
> 22   ~~registered or falsely registered so that a person searching a publicly~~
> 23   ~~available database such as WHOIS cannot readily determine the~~
> 24   ~~true identity of the party who initiated the email.~~

(Ex. 4 at 8, APP 46; Ex. 9 at 1, APP 273). Thus, this theory of liability cannot as a matter of law support a Section 17529.5 violation under the caselaw including *Sierra Club* cited above holding that courts cannot reinsert the deleted provision into the statute or enforce those deleted provisions. *Sierra Club*, 35 Cal. 4th at 856. And, although the California Legislature did not expressly consider the terms "redacted-for-privacy (privately) registered," the California Legislature clearly rejected imposing liability for using sending domains that are *untraceable* to the actual owner using the WHOIS database due to various registration methods, which is the sole thrust of this theory of liability. The California Legislature's decision controls and the caselaw forecloses any attempt to revive these prohibitions through this or any other litigation.

Plaintiffs' counsel during the motion conference argued that this and all of the other legislative rejections are irrelevant because Chau ultimately pulled the bill, and the bill died. Plaintiffs' counsel provided no authority to support this position, and it makes no sense given the clear and unequivocal deliberations and rejections of the legal theories plaintiffs pursue.

8

Additionally, rejecting plaintiffs' domain name theory would be consistent with the Third Circuit's decision in *Rad* made under the federal criminal Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"). *Rad v. U.S.*, 983 F.3d 651, 660 (3rd Cir. 2020). There, the Third Circuit held that individuals who pay for "private registration" and utilize proxy-registered domain names do not violate the prohibition on "materially falsified header information" in commercial emails. *Id.* at 660-661 (reviewing 18 U.S.C. § 1037(a)(3)). The court explained that these "mechanisms do not dictate that senders reveal who they are or where they are located in every message, and neither does the Act." *Id.* at 661. Further, the court acknowledged that proxy registration is a common practice, permitted by ICANN, which allows proxies to enter their own contact information instead of the owner's when registering domain names. *Id.* at 662. Accordingly, the court found that CAN-SPAM does not require the registrant to be the domain's day-to-day owner and rejected the theory that proxy registration constitutes "material falsification" under the act. *Id.*

Plaintiffs' domain name registration theory fails for the additional reason that proxy-registered and privately registered domain names are not false or deceptive, much less materially so as required to sustain a Section 17529.5 claim. Cal. Bus. & Prof. Code § 17529.5(a)(2); *Wagner v. Spire Vision LLC*, No. C 13-04952 WHA, 2015 WL 876514, at *3 (N.D. Cal. Feb. 27, 2015) (plaintiff "must be able to demonstrate that the header information … not only violated the California statute but contained *material* misrepresentations to avoid preemption under the CAN-SPAM Act. Any other claims are preempted 'insofar as they applied to immaterial misrepresentations.'") (emphasis added) (quoting 469 F.3d at 353). As the California Legislature recognized, "states may only regulate spam that is materially false or deceptive." (Ex. 12 at 5, APP 293.)

9

Here, plaintiffs allege that "[a] query for the domain name vilibliss.com [internal citation omitted] shows that the legal registrant is Domains By Proxy LLC, even though Domains By Proxy LLC did not send the spams, but rather puts its own name into the Whois database to shield the identities of its spammer-customers to whom it licenses full use of the domain names." (FAC ¶ 66.) Plaintiffs do not allege that the proxy registration information is false. Rather, accepting the complaint's allegations as true, the domain names alleged accurately reflect their proxy registered status, which truthfully and transparently states the nature of their registrations. Therefore, plaintiffs failed to allege any material falsification required to state a claim under Section 17529.5(a)(2), and their domain name theory fails as a matter of law for this additional reason.

*Balsam v. Trancos Inc*., 203 Cal. App. 4th 1083, 1098-1101 (1st Dist. 2012), cited by plaintiffs in their complaint, does not save this theory from dismissal. (FAC ¶¶ 58, 60-61.) The California Supreme Court holds that where the California Legislature was aware of the caselaw when it considered and rejected particular statutory language, its actions in response reflect its intent and should be respected. *City of Santa Cruz*, 49 Cal. 3d. at 88. Here, the Senate Judiciary Committee considered an extensive bill analysis and report that contained a comprehensive discussion of Section 17529.5 cases, including *Trancos*. (Ex. 12 at 7, APP 295.) Accordingly, the California Legislature was aware and considered *Trancos* and "untraceable domain names" that can result from the various domain name registration methods the plaintiffs allege in this lawsuit. (Ex. 12 at 7, APP 295.) As a result, the California Legislature could have and would have codified the prohibition of untraceable domain if it intended to do so. It did not, and the Court should decline to do so here too in deference to clear legislative intent.

Nor does *Greenberg v. Digital Media Solutions LLC*, 65 Cal. App. 5th 909 (1st Dist. 2021) save this theory of liability. (FAC ¶¶ 58, 61, 95, 99.)  Simply, this case failed to consider the legislative history, rejected amendments, and binding California caselaw prohibiting the interpretations that the court reached.  The court may very well have rejected the underlying theories had it considered the legislative rejections just as it did when it considered the 2003-2004 legislative history when concluding "that 'header information' should be interpreted in line with the federal definition—which undisputedly does not include subject-line information." 65 Cal. App. 5th at 916.

### 2. Plaintiffs' Theory that Misleading Subject Lines Can Support a Section 17529.5(a)(2) Claim Fails as a Matter of Law.

Plaintiffs' theory that misleading subject lines can support a claim for violations of Section 17529.5(a)(2) fails as a matter of law. (FAC ¶¶ 53-69.)

Section 17529.5(a)(2) prohibits email advertisements that "contain [] or [are] accompanied by falsified, misrepresented, or forged **header** information." Cal. Bus. & Prof. Code § 17529.5(a)(2) (emphasis added).  On February 15, 2018, AB 2546 was introduced and proposed an amendment that expanded Section 17529.5(a)(2) to prohibit falsified, misrepresented, or forged information in the subject line through this proposed language:

> 32    (2) The ~~e-mail~~ *email* advertisement contains or is accompanied
> 33    by falsified, misrepresented, or forged ~~header information.~~
> 34    *information in the header, subject line, or body.* This paragraph
> 35    does not apply to truthful information used by a third party who
> 36    has been lawfully authorized by the advertiser to use that
> 37    information.

(Ex. 1 at 7, APP 11.)

The bill analysis prepared for the Senate Judiciary Committee's consideration explained that "California's existing anti-spam law applies only to falsified, misrepresented, or forged header

information in emails" and that this amendment "would expand this provision to additionally apply to information in the subject line or body of the spam email." (Ex. 12 at 9, APP 297.)

However, the California Legislature, via the Senate, **rejected** this change:

> 12    (2) The *header of the* email advertisement contains or is
> 13    accompanied by falsified, misrepresented, or forged ~~information~~
> 14    ~~in the header, subject line, or body.~~ *information.* This paragraph
> 15    does not apply to truthful information used by a third party who
> 16    has been lawfully authorized by the advertiser to use that
> 17    information.

(Ex. 7 at 8, APP 80.)  Thus, plaintiffs cannot pursue this theory under *Sierra Club* and the other authorities cited in Section i(B) herein.

Further, Section 17529.5(a)(2) governs only "header information," and the proposed 2018 amendment reveals that subject lines are distinct from and are not included in "header information" for purposes of Section 17529.5(a)(2).  Courts interpret statutes based on the ordinary meaning of the statute's words, giving significance to every term. *Dyna-Med, Inc. v. Fair Emp. & Hous. Com.*, 43 Cal. 3d. 1379, 1387 (Cal. 1987).  The use of "or" in statutes designates separate categories (*White v. Cnty. of Sacramento*, 31 Cal. 3d 676, 680 (Cal. 1982)), as the plaintiffs acknowledge. (FAC ¶ 89) ("the disjunctive 'or' indicates that the listed terms are not the same thing.")  The proposed amendment aimed to categorize "subject line" and "body" alongside "header," creating distinct categories of "header, subject line, or body" under Section 17529.5(a)(2). (Ex. 1 at 7, APP 11.)  However, the California Legislature decided to exclude "subject line" and rejected the expansion of subsection (a)(2). (Ex. 7 at 8, APP 80.)  Where "the Legislature has employed a term or phrase in one place" but "excluded it in another, it should not be implied where excluded." *Wilson*, 6 Cal. App. 4th at 554.

Moreover, the canon of statutory interpretation that the specific statutory provision governs the general one applies here, precluding a finding that Section 17529.5(a)(2) regulates subject

12

lines. This is so because Section 17529.5(a)(3) explicitly covers subject lines, stating "[t]he e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(3). In such cases, "[t]he terms of the specific authorization must be complied with" to avoid "the superfluity of a specific provision that is swallowed by the general one." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012); *see also In re Padilla*, 222 F.3d 1184, 1192 (9th Cir. 2000) ("Statutory construction canons require that '[w]here both a specific and a general statute address the same subject matter, the specific one takes precedence.'") (citations omitted); *Woods v. Young*, 53 Cal. 3d 315, 324-325 (Cal. 1991) ("A specific provision relating to a particular subject will govern a general provision, even though the general provision…would be broad enough to include the subject to which the specific provision relates.") Adopting the plaintiffs' view of Section 17529.5(a)(2) would be contrary to the court's "duty to 'harmonize' the 'various elements'" of the statute "in order to carry out the overriding legislative purpose as gleaned from a reading of the entire act." *Sierra Club*, 35 Cal. 4th at 858 (citing *Wells v. Marina City Properties, Inc.*, 29 Cal. 3d 781, 788 (Cal. 1981)).

Caselaw also holds that allegedly misleading subject lines cannot support a Section 17529.5(a)(2) claim. Section 17529.5(a)(2) regulates "header" information related to the source of the email. *Holden v. Fluent, Inc.*, No. 20-CV-03816-JCS, 2020 WL 6822914, at *11 (N.D. Cal. Nov. 20, 2020). Thus, Section 17529.5(a)(2)'s definition "clearly does not include an email's subject line," especially considering the subsequent section of the statute explicitly covers subject lines. *Id*. (citation omitted). Accordingly, "the definition of header information adopted

by the California Supreme Court 'clearly does not include an email's subject line,' which is explicitly covered in subdivision (a)(3)." *Id*. (citation omitted).

Moreover, in *Greenberg*, the court explained that "in [its] view, this [the California Legislature's] discussion suggests that 'header information' should be interpreted in line with the federal definition—which undisputedly does not include subject-line information." *Greenberg*, 65 Cal. App. 5th at 916. Although the court did not consider the legislative history of the 2018 AB 2546 amendments, it did consider the legislative process in 2003-2004 to give deference to the legislative intent. *Id*. Accordingly, the court found that subject lines did not constitute "header information" for purposes of Section 17529.5(a)(2).

Desperate to avoid *Greenberg's* holding, plaintiffs' counsel during the conference preceding the filing of this motion accused One Technologies' lead counsel of committing ethical violations by citing the unpublished portion of *Greenberg* in this motion. Yet, plaintiffs' counsel provided no legal authority for his position when asked, or anything that would prohibit a Texas federal court from considering all aspects of *Greenberg*, especially given that plaintiffs cited *Greenberg* no less than six times in their complaint. (FAC ¶¶ 39, 58, 61, 95, 99.)

> **3.    Plaintiffs' Theory that the Email Subject Lines Violate Section 17529.5(a)(3) Fails as a Matter of Law.**

Plaintiffs' theory that the subject lines violate Section 17529.5(a)(3) because they used "re:", which implied that the emails were "in response to communications," and because they "impl[ied] a prior relationship" when One Technologies and the recipients did not have a prior relationship, fails as a matter of law. (FAC ¶¶ 89-93.)

> > i.    *"'Re:' or Anything Substantially Similar" in Subject Lines Does not Support a Section 17529.5(a)(3) Violation as a Matter of Law.*

14

In February of 2018, AB 2546 introduced amendments that would have prohibited false or

misrepresented subject lines and subject lines containing "re:" through this proposed language:

> 30    *(9)  The subject line begins with "re:" or anything substantially*
> 31    *similar,  or  the  subject  line  otherwise  states  that  the  email*
> 32    *advertisement is being sent in response to a request or previous*
> 33    *correspondence from the recipient, when the recipient made no*
> 34    *such request.*

(Ex. 1 at 8, APP 12.)

On June 20, 2018, the Senate Committee Chair, "with author's [Chau's] amendments,"

ordered that AB 2546 be "amend[ed] and re-referred to committee" to be "read [a] second time,

amended, and re-referred to the [Senate] Com[mittee] on Jud[iciary]." (Ex. 9 at 2, APP 274.)  Prior

to allowing AB 2546 to proceed, the bill was amended. (Ex. 5 at 8, APP 58; Ex. 9 at 2, APP 274.)

And, the California Legislature, via the Senate, **rejected** this change:

> 26    (7)  The subject line begins with "re:" or anything substantially
> 27    similar,  or  the  subject  line  otherwise  states  that  the  email
> 28    advertisement is being sent in response to a request or previous
> 29    correspondence  from  the  recipient,  when  the  recipient  made  no
> 30    such request, for the purpose of inducing the recipient to view the
> 31    email.

(Ex. 5 at 8, APP 58; Ex. 9 at 2, APP 274.)

Thus, the California Legislature considered, but rejected, amendments that would have

prohibited, falsified, or misleading subject lines with "re:" or false claims of a preexisting

relationship by rejecting "or anything substantially similar." (*Id.*)  Plaintiffs thus cannot pursue

this theory of liability under *Sierra Club* or the other caselaw cited in Section I(B) above.

      *ii.    Subject Lines Related to Credit Scores Cannot Support*

        *Plaintiffs' Section 17529.5(a)(3) Claim.*

Plaintiffs' allegations that the subject lines violate Section 17529.5(a)(3) because the

subject lines contain incorrect information about plaintiffs' credit scores and "assert" or "imply"

that "ONETECH is tracking their credit scores" though "ONETECH knows nothing about their

15

credit scores" cannot support a Section 17529.5(a)(3) claim. (FAC ¶¶ 89-94.)  Simply stated, the test is whether email subject lines on the one hand, and the contents and subject matter of the emails on the other hand, match.  And, here, they do.  Thus, plaintiffs' allegations that the subject lines violate Section 17529.5(a)(3) fail, and the Court should decline plaintiffs' invitation to judge the subject lines in isolation.

First, Section 17529.5(a)(3) expressly requires considering the email bodies when judging the subject lines by stating "[t]he e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(3).  Thus, subject lines cannot be judged without reviewing the contents or subject matter of the emails.

Second, in February of 2018, the California Legislature considered AB 2546, which introduced an amendment that would have effectively prohibited courts from reviewing the subject lines in the context of the email bodies to contextualize or qualify email subject lines through this proposed language:

> 3    *(c)  Truthful content in or accompanying an email advertisement,*
> 4    *including, but not limited to, identifying the sender in the body of*
> 5    *an email advertisement, shall not cure false, misrepresented, or*
> 6    *forged information in another part of an email advertisement.*

(Ex. 1 at 9, APP 13.)  When Chau presented this amendment, he explained in his bill analysis that "this bill rejects [*Rosolowski v. Guthy-Renker*] as a matter of public policy," because "[r]estated as a broader principle, the court essentially found that truthful content in one part of a spam can cure an unrelated falsity or defect in another part of a spam email." (Ex. 10 at 7, APP 282) (citing *Rosolowski v. Guthy-Renker*, 230 Cal. App. 4th 1403, 1407 (2014)).

On July 2, 2018, the Senate Committee on Appropriations considered AB 2546, and upon a second read, it amended the bill and re-referred it to the Committee on Appropriations. (Ex. 9 at 2, APP 274.)  Thus, the California Legislature, via the Senate, **rejected** this amendment:

1    (e)  Truthful content in or accompanying an email advertisement,
2    including, but not limited to, identifying the initiator or sender in
3    the body of an email advertisement, shall not cure falsified,
4    misrepresented, or forged information in another part of an email
5    advertisement.

(Ex. 6 at 8, APP 69.).  Prior to the rejection, on June 26, 2018, the Senate Judiciary Committee bill analysis stated that "[i]ndeed, an apparently false subject line in an email could become clear when read in the context of its body." (Ex. 12 at 10, APP 298.)  As such, AB 2546 proponents emphasized that "[i]f the Committee fe[lt] that a court should not be restricted from engaging in a holistic assessment of the overall character of the email in determining whether it is materially false or deceptive, the Committee may wish to consider amending the bill to omit this provision." (Ex. 12 at 11, APP 298.)  The California Legislature, via the Senate, did exactly that and omitted the provision. (Ex. 6 at 8, APP 69.)

Thus, the California Legislature expressly declined to restrict courts from "engaging in a holistic assessment of the overall character of the email." (Ex. 12 at 11, APP 299.)  Accordingly, plaintiffs must allege that when viewing an email's subject line together with the email's body, rather than reading the subject line in isolation, the subject line might plausibly "lead a reasonable person to expect something materially different than the message's actual content or subject matter." *Rosolowski*, 230 Cal. App. 4th at 1418.

Here, plaintiffs allege that the subject lines contain incorrect information about plaintiffs' credit scores, (FAC ¶¶ 85-86.) and "assert" or "imply" that "ONETECH is tracking their credit scores," although "ONETECH knows nothing about their credit scores." (FAC ¶¶ 89-93.)  The plaintiffs, however, concede that "the misleading nature of these Subject Lines is ***not*** as to the

17

contents" of the emails but instead argue that recipients were likely to be misled about "the true subject matter of the spams (new customer acquisition)." (FAC ¶¶ 89-93.) (emphasis added). Yet the email subject matter (credit score services) matches the subject line subject matter (credit score) assuming the allegations in the complaint are true. Indeed, plaintiffs admit in their amended complaint that "[t]here is no dispute that the spams at issue promote ONETECH and its websites and credit monitoring/credit score checking services." (FAC ¶ 97.) Plaintiffs therefore cannot and do not plausibly allege that anyone knew that subject lines like "view your new January 2024 scores now!" (FAC ¶ 86) or the others alleged in the complaint were likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the email subject matter given that the emails advertise credit monitoring services. (FAC ¶¶ 15, 25, 27, 97, Exs. A-B.)

Finally, enforcing the statute in the manner proposed by the plaintiffs would not achieve any statutory purpose. Rather, a separate statute, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"), permits plaintiffs to sue for false advertising, which is essentially what they allege by claiming that the subject lines contain inaccurate information about their credit scores. (FAC ¶ 90.) Specifically, the FAL prohibits advertising from containing false, untrue, or misleading statements or statements that have a capacity, likelihood, or tendency to deceive or confuse the public, including false endorsements. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (Cal. 2002), *as modified* (May 22, 2002).

### 4.  <u>Plaintiffs "From" Name Theory Fails as a Matter of Law.</u>

Plaintiffs' theories that emails containing "from" names that "allege[] the recipient is a spammer" because those emails have "username parts" of the recipients' email addresses, and that using "momdukesmeme," (FAC ¶ 79), for example, suggests that plaintiffs' sent emails to themselves, fail as a matter of law. (FAC ¶¶ 79-80.)

On March 21, 2018, Chau further amended AB 2546 during the Assembly Committee on Privacy and Consumer Protection's consideration of the bill (Ex. 9 at 1, APP 273), which expanded Section 17529.5 and broadened the private right of action through the use of this language:

> 4   *(iv)  A person or entity whose name, username, email address,*
> 5   *or domain name appear in the "from" name or sender's email*
> 6   *address without permission from that person or entity.*

(Ex. 2 at 9, APP 25.)  The proposed language would have added a provision prohibiting emails with "from" names where this information was used without authorization. (Ex. 2 at 9, APP 25.)

The California Legislature, via the Assembly, explicitly **rejected** this amendment:

> 15   ~~(iv) A person or entity whose name, username, email address,~~
> 16   ~~or domain name appear in the "from" name or sender's email~~
> 17   ~~address without permission from that person or entity.~~

(Ex. 4 at 9, APP 47.)  This rejection confirms the California Legislature's intent to limit the scope of the statute and not extend it to the use of the recipient's name or email address in the "from" name of the email.  Accordingly, the statute may not be interpreted to include this rejected provision. *Sierra Club*, 35 Cal. 4th at 856; *Kelly*, 22 Cal. 4th at 1108.

Plaintiffs' theory that "from names" violate Section 17529.5(a)(2) if they "deliberately state, or at least imply, that the emails are from a source—i.e., ONETECH or its third-party spammers—that has actual knowledge that Plaintiffs' credit scores have updated (i.e., changed), or worse, that they updated/changed downward such that Plaintiffs need to be 'alerted'" fails as a matter of law too. (FAC ¶ 77.)  Stated simply, Section 17529.5(a)(2) does not regulate information in the "from" names about what the source knew but is limited to information about the identity of the source itself.

Section 17529.5(a)(2) prohibits email advertisements that "contain [] or [are] accompanied by falsified, misrepresented, or forged header information." Cal. Bus. & Prof. Code

§ 17529.5(a)(2). Under Section 17529.5(a)(2), the "header information," which includes "from" names, addresses the *identity* of the email's origin, not the sender's state of mind. In fact, the California Legislature recognized that "states may only regulate spam to the extent that it is 'false or deceptive' with regard to a material matter." (Ex. 12 at 7, APP 297.) And, the California Legislature recognized the "the sender's identity" is what is material. (*Id.*)

Though Section 17529 does not define "header information," California courts evaluating Section 17529.5 claims apply CAN-SPAM's definition of "header information," namely "the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 340 n.5 (Cal. 2010) (citing CAN-SPAM, 15 U.S.C. § 7702(8) and applying CAN-SPAM's "header information" definition to Section 17529.5 claims); *Holden*, 2020 WL 6822914, at *11; *Silverstein v. Keynetics Inc.*, 192 F. Supp. 3d 1045, 1047 n.3 (N.D. Cal. 2016), *aff'd*, 727 Fed. Appx. 244 (9th Cir. 2018) (citation omitted); *Wagner v. Spire Vision LLC*, No. C 13-04952 WHA, 2015 WL 876514, at *3 (N.D. Cal. Feb. 27, 2015) (citation omitted).

Following CAN-SPAM's definition of "header information" makes sense, given the California Supreme Court's precedent holding in *Belridge* that state statutes "patterned after federal statutes" will be construed under the federal statutes. *Belridge Farms v. Agric. Lab. Rels. Bd.*, 21 Cal. 3d 551, 557 (Cal. 1978) (citations omitted). The California Legislature did intend that the "enacted state law banning e-mail spam to conform to [the] enacted federal law." (Ex. 13 at 1, APP 305.)

In fact, plaintiffs agree that, for purposes of Section 17529.5(a)(2), the header is concerned with the identity of the sender, stating that "email headers include the From name, which identifies—or at least purports to identify—who the email is from." (FAC ¶ 74.)  Plaintiffs also point to the federal CAN-SPAM definition of "header information," reaffirming that the "from" name is concerned with the identity of the person or business who initiated the message. (FAC ¶ 62.)  Thus, plaintiffs' theory misses the key issue that the statute regulates the *identity* of the email's source, not what the source knew about the recipient.

Additionally, plaintiffs' allegations that they thought they sent emails to themselves because their "username parts" appeared in the "from" names fails. (FAC ¶¶ 78-79.)  Plaintiffs allege they knew that "the spams [were] from ONETECH and its spammers," (FAC ¶¶ 77-80) as every email identified One Technologies d/b/a FreeScore360 by name and address, links to FreeScore360's website, and contained a link allowing recipients to unsubscribe from receiving the email. (FAC ¶¶ 15, 25, 27, Exs. A-B.)  They therefore knew that they did not send the emails to themselves accepting their allegations as true, and their allegations to the contrary fail to support a Section 17529.5 violation for this reason.  Additionally, the California Legislature rejected amendments that would have prohibited using plaintiffs' names in the email from names without their permission so this legal theory fails for this additional reason. (Ex. 4 at 9, APP 47.)

For any and all of these reasons, plaintiffs' "from" name theory of liability fails as a matter of law too, thereby leaving nothing to support the FAC's first count.  The Court should thus dismiss the first count for failing to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### C.    Count Two Fails as a Matter of Law.

#### 1.    Plaintiffs' Aiding and Abetting and Conspiracy Theories Under Section 17529.5 Fail as a Matter of Law.

Plaintiffs' theories that "the spammers (actual senders) …aided and abetted ONETECH[]" (FAC ¶ 129) and "the spam networks…conspired with the spammers/actual senders to aid and abet ONETECH[]," (FAC ¶ 133) violating Section 17529.5 fail as a matter of law. (FAC ¶¶ 129-136.)

First, there is no claim that survives dismissal under the plaintiffs' first cause of action. Thus, there is no violation to aid or abet or to support a conspiracy.  Thus, plaintiffs' second cause of action fails as a matter of law for this reason alone.

Second, on February 15, 2018, AB 2546 was introduced to expand the statute to cover entities that initiate, enable, or assist a person or entity to initiate through this proposed language:

> 24    *(b)*   It is unlawful for any person or entity to *initiate,* advertise
> 25    ~~in~~ *in, or enable a person or entity to initiate or advertise in,* a
> 26    commercial ~~e-mail~~ *email* advertisement either sent from California
> 27    or sent to a California electronic mail address under any of the
> 28    following circumstances:

(Ex. 1 at 7, APP 12).  When Chau presented this amendment, his bill analysis explained "by enhancing the triggering events that could lead to a violation of the anti-spam law and ensuring that the law is sufficiently broad to capture not just those persons or entities advertising to Californians in violation of those triggering events, but also personally initiating or even enabling or assisting another person or entity to engage in such acts in violation of the law (similar to aiding or abetting a crime)." (Ex. 10 at 5, APP 280.)  In other words, "[t]hese changes would cause Section 17259.5's restrictions to apply to the advertiser—defined as a person or entity that advertises through the use of commercial email advertisements (Bus. & Prof. Code Sec. 17529.1(a))—as well as an entity that transmits spam by providing email addresses to which the spam will be sent." (Ex. 12 at 9, APP 297.)

However, the California Legislature, via the Senate, **rejected** the following language:

22    (b)  It is unlawful for any person or entity to ~~initiate,~~ *initiate or*
23    advertise ~~in, or enable or assist a person or entity to initiate or~~
24    ~~advertise in,~~ *in* a commercial email advertisement either sent from
25    California or sent to a California electronic mail address under any
26    of the following circumstances:

(Ex. 7 at 8, APP 80.)  Although, the term "initiate" was not omitted, Chau subsequently withdrew AB 2546, and the bill ultimately failed. (Ex. 9 at 2, APP 274.)  As a result, the term "initiate" does not appear in the statute and is absent from Section 17529.5. Cal. Bus. & Prof. Code § 17529.5. And, the statute was never amended to incorporate this term. *Id.*  The legislative history also establishes that the California Legislature considered and rejected a cause of action "similar to an aiding and abetting crime" as none of those proposed amendments were made to the statute. (Ex. 7 at 8, APP 80; Ex. 10 at 5, APP 280).

Under binding precedent, Section 17529.5 cannot be interpreted or expanded and is inconsistent with the language the California Legislature explicitly rejected. *Sierra Club*, 35 Cal. 4th at 856; *Kelly*, 22 Cal. 4th at 1108.  The legislative history establishes that the California Legislature considered and rejected a cause of action "similar to an aiding and abetting crime." (Ex. 10 at 5, APP 280.)  This rejection establishes as a matter of law that "actual senders" and "spam networks" who enabled or assisted One Technologies in sending commercial emails cannot violate Section 17529.5 because the California Legislature's explicit "rejection of a specific provision…is 'most persuasive' that the act should not be interpreted to include what was left out." *Murphy v. Kenneth Cole Prods.*, *Inc.*, 40 Cal. 4th 1094, 1107 (2007) (citations omitted).  Plaintiffs' claim thus fails as a matter of law.

23

IV.    <u>CONCLUSION</u>

For the foregoing reasons, One Technologies respectfully requests the Court to grant its

Motion to Dismiss the Complaint under Rule 12(b)(6) and for any and other further relief, at law

and/or inequity, to which it may be justly entitled.

Dated: October 11, 2024                                 Respectfully submitted,

                                                        By: *Jonathan R. Childers*
                                                            Jonathan R. Childers
                                                            State Bar No. 24050411
                                                            jchilders@lynnllp.com
                                                            Alan Dabdoub
                                                            State Bar No. 24056836
                                                            adabdoub@lynnllp.com
                                                            **LYNN PINKER HURST &**
                                                            **SCHWEGMANN, LLP**
                                                            2100 Ross Ave., Suite 2700
                                                            Dallas, Texas 75209
                                                            Tel: (214) 981-3800
                                                            Fax: (214) 981-3839

                                                            Ari N. Rothman (*pro hac vice*)
                                                            anrothman@venable.com
                                                            **VENABLE LLP**
                                                            600 Massachusetts Ave NW
                                                            Washington, D.C. 20001
                                                            Tel: (202) 344-4000
                                                            Fax: (202) 344-8300

                                                        **COUNSEL FOR DEFENDANT**
                                                        **ONE TECHNOLOGIES, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

A true and correct copy of the foregoing document has been filed via CM/ECF and served
via CM/ECF and Email on all counsel of record on October 11, 2024.

                                                        *Jonathan R. Childers*
                                                        Jonathan R. Childers