United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLE AUSTIN, TYNIA BAISDEN, TANISHA CARTER, LATANYA DIXON, FANTASIA HILLIARD, ALONA JENNINGS, DANIELLE LOWERY, MARIO MERINO, BRINDA MOORE, JESSICA PARKER, and JOHN WALKER | § § § § § § § § § § § § | CIVIL ACTION NO. 3:24-CV-0839-S |
| v. | | |
| ONE TECHNOLOGIES, LLC, and DOES 1-1,000 | | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant One Technologies, LLC's Motion to Dismiss the First Amended Complaint for Failure to State a Claim ("Motion") [ECF No. 48]. The Court has reviewed the Motion, Defendant's Brief in Support of the Motion ("Defendant's Brief") [ECF No. 49], Plaintiffs Nicole Austin, Tynia Baisden, Tanisha Carter, Latanya Dixon, Fantasia Hilliard, Alona Jennings, Danielle Lowery, Mario Merino, Brinda Moore, Jessica Parker, and John Walker's Response in Opposition to the Motion ("Response") [ECF No. 51], Defendant's Reply in Support of the Motion [ECF No. 55], and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

### I. BACKGROUND

This case revolves around allegedly unlawful spam emails sent to Plaintiffs. Pls.' First Am. Compl. ("Amended Complaint") [ECF No. 44] ¶ 1. Defendant One Technologies, LLC, the only named defendant,[1] provides credit monitoring and credit score checking services, which it advertised in the emails at issue. *Id.* ¶ 13. Defendant allegedly "engaged third-party spam

---

[1] Because One Technologies, LLC, is the only named defendant, the Court will refer to One Technologies, LLC, as "Defendant" herein.

networks, who in turn engaged third-party spammers, to send spams promoting" Defendant and its websites and services. *Id.* ¶ 15. Plaintiffs sued a number of unidentified individuals and entities that were allegedly involved in the email scheme. Does 1-100 "are directors, owners, officers, employees, or independent contractors of [Defendant]." *Id.* ¶ 14. Does 101-500 are the "spammers" who sent the emails at issue. *Id.* ¶ 16. Does 501-900 are the spam networks that allegedly contracted with Defendant and the spammers to coordinate the sending of the emails. *Id.* ¶¶ 18-19. Does 901-1,000 are "other persons or entities involved with [Defendant's] unlawful spamming." *Id.* ¶ 21.

Plaintiffs allege that they received more than 1,900 unlawful spam emails advertising Defendant and its websites and services. *Id.* ¶¶ 15, 25. Plaintiffs challenge various categories of these emails as unlawful under California's anti-spam law, California Business and Professions Code § 17529.5. First, under Section 17529.5(a)(2), they take issue with the emails' domain and sender names. Specifically, Plaintiffs target emails sent using domain names that are not readily traceable to the sender, i.e., emails sent using proxy-registered, redacted-for-privacy, falsely registered, or not registered (purported) domain names. Am. Compl. ¶¶ 53-69. When a recipient looks up a proxy-registered domain name in publicly accessible databases, it shows up as being registered to a proxy registration service, as opposed to the actual sender. *Id.* ¶ 66. When a recipient looks up a redacted-for-privacy domain name, the registration information is redacted. *Id.* A falsely registered domain name is registered to a fake name at: (1) a fake address, (2) a commercial mail receiving agency or virtual office, or (3) a real address. *Id.* ¶ 67. And a not registered domain name is one that returns no matches in publicly accessible databases. *Id.* ¶ 68.

Plaintiffs also take issue with emails sent with forged domain names and false or misrepresented sender names. *Id.* ¶¶ 70-81. Forged domain names are forged so that it appears that

emails came from nonexistent domain names. *Id.* ¶ 72. And false or misrepresented sender names are names that misrepresent the sender of the email, such as sender names that look like Plaintiffs' email usernames. *See, e.g., id.* ¶ 79.

Second, Plaintiffs challenge the emails' subject lines under both Section 17529.5(a)(2) and Section 17529.5(a)(3). *Id.* ¶¶ 82-93. According to Plaintiffs, the subject lines of the emails are false, misrepresented, and/or likely to mislead a recipient about the content or subject matter of the email. *Id.*

Plaintiffs' first cause of action is against Defendant and Does 1-100 for the above-listed alleged violations. *Id.* ¶¶ 117-26. Plaintiffs' second cause of action is against Does 101-900 for aiding and abetting and conspiring to aid and abet such violations. *Id.* ¶¶ 127-36. Defendant moves to dismiss both causes of action.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (citation omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555

(citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). It only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

### III. ANALYSIS

The Court first disposes of Defendant's argument that changes to an unpassed bill preclude Plaintiffs' claims. The Court then turns to Plaintiffs' domain and sender name theories of liability under Section 17529.5(a)(2) before analyzing Plaintiffs' subject line theory of liability under the same subsection. Next, the Court considers Plaintiffs' subject line theory of liability under Section 17529.5(a)(3). The Court concludes by addressing the cause of action for aiding and abetting and conspiracy.

#### *A. Assembly Bill 2546*

As an initial matter, Defendant moves to dismiss all of Plaintiffs' claims on the ground that the California Legislature rejected their legal theories in connection with California Assembly Bill 2546 ("AB 2546"). *See, e.g.*, Def.'s Br. 2-4. Due to the overarching nature of this argument, the Court addresses it first.

In 2018, a California Assembly Member introduced AB 2546, which would have amended California's anti-spam law to explicitly outlaw much of the conduct Plaintiffs are challenging in this case. *Id.* at 2-3. Throughout the year, the California Legislature rejected most of the changes proposed in AB 2546. *Id.* at 3. The sponsoring Assembly Member ultimately withdrew the bill. *Id.*; *see also* Resp. 5. Defendant contends that Plaintiffs now are "pursuing liability on theories that the California Legislature rejected" in connection with AB 2546 and that doing so is impermissible

4

because courts cannot "constru[e] or apply[] statutes in a manner that would reinsert into statutes provisions or theories of liability that the California Legislature rejected." Def.'s Br. 4 (citing *Sierra Club v. Cal. Coastal Comm'n*, 111 P.3d 294, 304 (Cal. 2005); *Kelly v. Methodist Hosp. of S. Cal.*, 997 P.2d 1169, 1173 (Cal. 2000)).

However, the cases on which Defendant relies are inapposite. In *Sierra Club*, the Supreme Court of California noted that "in passing the Coastal Act, the Legislature considered, but rejected, proposed language that would have" supported the plaintiff's legal theory. 111 P.3d at 304 (citation omitted). Similarly, in *Kelly*, the court looked to "the apparent legislative intent in enacting the relevant version of the religious-entity exemption." 997 P.2d at 1173. In both cases, the Supreme Court of California was considering the legislative history of the law in effect at that time. Here, however, Defendant asks the Court to consider the legislative history of an unpassed bill. "Unpassed bills, as evidences of legislative intent, have little value." *Arnett v. Dal Cielo*, 923 P.2d 1, 17 (Cal. 1996) (citation omitted); *see also Heavenly Valley Ski Resort v. El Dorado Cnty. Bd. of Equalization*, 101 Cal. Rptr. 2d 591, 605 (Cal. Ct. App. 2000) ("Since the bill was apparently withdrawn rather than voted down, we draw no inference of legislative intent from it."). "[T]here are a number of possible reasons why the Legislature might have failed to enact a proposed provision," including "that it might have believed the provision unnecessary because the law already so provided." *Arnett*, 923 P.2d at 16. Therefore, the Court concludes that the legislative history of AB 2546 is irrelevant to the Court's analysis and does not defeat Plaintiffs' claims.

### B. Direct Claims Against Defendant and Does 1-100

In their first cause of action, asserted against Defendant and its unidentified directors, owners, officers, employees, or independent contractors, Plaintiffs challenge the emails' domain names, sender names, and subject lines under California Business and Professions Code

§ 17529.5(a)(2). Am. Compl. ¶ 119. That subsection prohibits email advertisements containing "falsified, misrepresented, or forged header information." CAL. BUS. & PROF. CODE § 17529.5(a)(2). Plaintiffs also challenge the emails' subject lines under California Business and Professions Code § 17529.5(a)(3), which prohibits email advertisements that have "subject line[s] that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." *See* Am. Compl. ¶ 119. The Court analyzes these theories of liability in turn below.

### *i. Domain and Sender Names—Subsection (a)(2)*

The Court first considers Plaintiffs' Section 17529.5(a)(2) claim based on falsified, misrepresented, or forged domain names, including proxy-registered, redacted-for-privacy, falsely registered, not registered (purported), and forged domain names, and falsified or misrepresented sender names. Applying the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have adequately alleged a cause of action based on falsified, misrepresented, or forged domain and sender names.

### *ii. Subject Lines—Subsection (a)(2)*

Next, the Court turns to Plaintiffs' Section 17529.5(a)(2) claim based on false or misrepresented subject lines. Defendant argues that subsection (a)(2) only applies to "header information," which does not include subject lines. Def.'s Br. 11-14. Plaintiffs respond that the legislative history, statutory language, and use of the term in other sources prove that "header information" encompasses subject lines. Resp. 3, 13-17. The Court agrees with Defendant.

Under California law, a court's "fundamental task" in interpreting a statute "is to determine the Legislature's intent so as to effectuate the law's purpose." *Kleffman v. Vonage Holdings Corp.*,

232 P.3d 625, 628 (Cal. 2010) (citation omitted). Based upon its review of the statute, the Court concludes that the California Legislature did not intend to include subject lines in the definition of header information. Subsection (a)(3), discussed in more detail below, follows immediately after subsection (a)(2) and explicitly covers subject lines. That subsection sets forth the requirement for subject lines under the anti-spam law: that they must not be "likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." CAL. BUS. & PROF. CODE § 17529.5(a)(3). The Court determines, therefore, that the California Legislature intended that standard to be the test for whether subject lines are prohibited, rather than the "falsified, misrepresented, or forged" standard imposed by subsection (a)(2).[2] In fact, it is difficult to conceive of how a subject line could be "forged," which further indicates that the Legislature did not intend subsection (a)(2) to apply to subject lines.

California case law reinforces the Court's conclusion. In *Kleffman*, the Supreme Court of California stated that "California statutes do not define either the word 'header' or the phrase 'header information.'" 232 P.3d at 629 n.5. The court noted that the federal CAN-SPAM Act defines "header information" as "the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." *Id.* (quoting 15 U.S.C. § 7702(8)). The court then remarked that the California Legislature, in enacting Section 17529.5(a)(2), considered, but did not adopt, a similar definition. *Id.* (citation omitted). The *Kleffman* court's analysis went no further, as there

---

[2] The Court also notes that the bill analysis prepared for AB 2546 stated that the existing law only applied to "falsified, misrepresented, or forged *header* information" and that AB 2546 would expand the provision to "additionally apply to information in the subject line . . . of the spam email." App. in Supp. of Mot. [ECF No. 50], Ex. 12, at 297.

was no dispute that the information at issue in that case—domain names—was part of the relevant emails' header information. *Id.* at 628-29.

The discussion in *Kleffman* suggests, at least to some extent, that "header information" in subsection (a)(2) should be defined similarly to the same term in the federal statute. And under the federal definition, "information contained in the subject line of . . . emails . . . does not constitute header information." *United States v. Kilbride*, No. CR 05-870-PHX-DGC, 2007 WL 1589561, at *5 (D. Ariz. June 1, 2007) (internal quotation marks omitted). At least one decision from a California Court of Appeal after *Kleffman* has implied that subject lines are not part of the header information.[3] *See Greenberg v. Digit. Media Sols., LLC*, 280 Cal. Rptr. 3d 439, 444 (Cal. Ct. App. 2021) (distinguishing between representations "in the header information *or* subject line" (emphasis added) (citing, among other sources, *Kleffman*, 232 P.3d at 632-33)). Notably, Plaintiffs did not cite a single case holding that subject lines are part of the "header information" governed by Section 17529.5(a)(2).

For these reasons, the Court determines that Plaintiffs cannot state a claim for violations of Section 17529.5(a)(2) based on allegedly falsified, misrepresented, or forged subject lines and dismisses their first cause of action only to the extent it relies on such a theory of liability.

### iii. Subject Lines—Subsection (a)(3)

The Court reaches a different conclusion with respect to Plaintiffs' theory that the emails' allegedly misleading subject lines violate Section 17529.5(a)(3). As to that theory of liability, applying the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true and viewing them in the light most favorable to

---

[3] The Court agrees with Plaintiffs that in some cases decided after *Kleffman*, courts have erred in stating that *Kleffman* endorsed the federal definition, as opposed to merely reciting it. *See* Resp. 4 (citation omitted). The Court has not relied on any of these cases in reaching its decision.

Plaintiffs, the Court concludes that Plaintiffs have stated a claim to relief that is plausible on its face.

### C. Aiding and Abetting and Conspiracy Claims Against Does 101-900

In their second cause of action, Plaintiffs assert that unidentified spammers aided and abetted Defendant's alleged violations of California law and that unidentified spam networks conspired with the spammers to aid and abet such violations. Am. Compl. ¶¶ 129, 133. Applying the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have pleaded sufficient facts to state a claim to relief that is plausible on its face with respect to the cause of action asserted against Does 101-900.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant One Technologies, LLC's Motion to Dismiss the First Amended Complaint for Failure to State a Claim [ECF No. 48]. The Court **GRANTS** the Motion with respect to Plaintiffs' anti-spam cause of action against Defendant and Does 1-100 only to the extent such claim is brought under Section 17529.5(a)(2) and based on false or misrepresented subject lines. That theory of liability is **DISMISSED WITH PREJUDICE**. The Court **DENIES** the Motion with respect to the remainder of Plaintiffs' causes of action and theories of liability.

**SO ORDERED.**

SIGNED July 31, 2025.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**